# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-05-00489-CR**

---

**Ex parte Santiago Morales, Jr.**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT**
**NO. CR-04-208, HONORABLE GARY STEEL, JUDGE PRESIDING**

---

## O P I N I O N

We consider the constitutionality of section 21.12 of the penal code, which prohibits Texas primary and secondary school employees from engaging in sexual conduct with students enrolled at a school where they work. *See* Tex. Pen. Code Ann. § 21.12 (West Supp. 2005). After being indicted under section 21.12, appellee Santiago Morales, Jr. filed an application for writ of habeas corpus challenging the statute's constitutionality. The district court found section 21.12 unconstitutional, granted the writ of habeas corpus, and dismissed the indictment. The State appeals the dismissal. Concluding that section 21.12 withstands constitutional muster, we will reverse.

## BACKGROUND

The parties agree that Morales was employed as a "Student Activities/Recreation Assistant" at San Marcos Baptist Academy, a private secondary school in Hays County. According

to counsel, Morales served as a counselor or advisor to the school's R.O.T.C. program and as a Dormitory Residential Advisor. Morales was indicted under section 21.12 of the penal code, which provides:

> An employee of a public or private primary or secondary school commits an offense if the employee engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works and who is not the employee's spouse.

*Id.* § 21.12(a). An offense under this provision is a second degree felony. *Id.* § 21.12(b). The legislature contemplated that conduct constituting an offense under section 21.12 might also violate other penal code provisions,[1] and provided that such conduct may be prosecuted under either or both applicable sections. *Id.* § 21.12(c). The indictment alleged, in relevant part, that Morales, an employee of the San Marcos Baptist Academy, a private secondary school, intentionally and knowingly engaged in deviate sexual intercourse with a student of the Academy who was not his spouse.[2]

Morales sought pretrial habeas corpus relief, asserting that section 21.12 is facially unconstitutional under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as the counterpart provisions of the Texas Constitution. Morales emphasized

---

[1] *See* Tex. Pen. Code Ann. §§ 21.11 (West 2003) (indecency with a child), 22.011 (West Supp. 2005) (sexual assault of a child).

[2] In connection with his arguments concerning *Lawrence v. Texas* and the Equal Protection Clause, discussed below, Morales emphasizes that both he and the student were male. With the possible exception of these issues, the genders of Morales and the student has no bearing on our legal analysis.

2

that because section 21.12 extends to any "person who is enrolled in a public or private primary or secondary school at which the employee works," section 21.12 criminalizes sexual conduct not only with minor students, but also with students who are above the age of 17, the age of legal consent currently defined in Texas law.[3] While not contending that there is a constitutional right to engage in sexual conduct with minor schoolchildren, Morales urged that section 21.12's impact on sexual conduct between school employees and those students over the age of consent renders it unconstitutional. Central to his contentions was the premise that the federal and state constitutions recognize a fundamental liberty interest in "private sexual conduct between consenting adults" rooted in the rights to privacy, freedom of association, and due process, and that any state infringement on this fundamental right is subject to a "strict scrutiny" analysis—permitted only if narrowly tailored to serve a compelling state interest. *See*, *e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (due process); *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (freedom of association); *Roe v. Wade,* 410 U.S. 113, 155 (1973) (privacy). Based on this premise, Morales urged that section 21.12 is impermissibly overbroad and vague in proscribing conduct beyond any which the state might have a compelling interest in regulating, and also violated his rights to due process and equal protection. The district court agreed, granted habeas relief, and ordered Morales discharged. This appeal followed.

---

[3] *See id.* §§ 21.11(a) (indecency with a "child" applicable to children younger than 17 years of age), 22.011 (sexual assault of a "child" applicable to a person younger than 17 years of age who is not the spouse of the actor); *see also id.* §§ 21.11(b)(affirmative defense may be available where actor was not more than three years older than victim at time of offense), 22.011(3) (same).

3

**DISCUSSION**

In a single issue, the State contends that the district court erred in holding section 21.12 unconstitutional. Morales responds to the merits of the State's constitutional argument, but first challenges our jurisdiction to entertain the State's appeal.

We briefly emphasize the context of our legal inquiry within our larger constitutional system. As a court, we take no "side" in any policy debate regarding the wisdom of section 21.12's underlying purposes or the efficacy of that statute in advancing those goals. Our role is to determine, first, whether the State's appeal is within our jurisdiction to adjudicate, and if so, whether the district court erred in holding that the legislature's policy judgments manifested in section 21.12 are forbidden by the constitutional limitations that Morales has raised. As long as they do not exceed these constitutional limitations, any past or future policy decisions regarding section 21.12 remain with the legislature and the people. Moreover, as an intermediate state appellate court, we must similarly defer to the authoritative pronouncements of higher courts that currently define the scope of the constitutional principles we apply here.[4]

**Subject matter jurisdiction**

Morales asserts that this Court is without subject matter jurisdiction to hear the State's appeal for two reasons: (1) the State does not have a right to appeal from a habeas corpus ruling; and (2) the State did not timely file its notice of appeal.

---

[4] *Cf. Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 564-65 (Tex. App.—Austin 2004, no pet.) ("As an intermediate appellate court, we . . . follow the precedents of the Texas Supreme Court unless and until the high court overrules them.").

4

*Appeal from order granting habeas corpus relief*

Morales first contends that the State is not authorized to appeal from orders granting habeas corpus relief.  It is true that, as a general rule, the State cannot appeal an adverse ruling in a habeas proceeding.  *State ex rel. Holmes v. Klevenhagen*, 819 S.W.2d 539, 541 (Tex. Crim. App. 1991) (orig. proceeding); *State v. Reyes*, 115 S.W.3d 229, 231 (Tex. App.—Fort Worth 2003, pet. ref'd).  However, the State may appeal an adverse habeas ruling if a statute provides for such an appeal.  *State v. Fowler*, 97 S.W.3d 721, 721 (Tex. App.—Waco 2003, no pet.).

The State is entitled to appeal a court's order in a criminal case if the order "dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint." Tex. Code Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 2005).  When a trial court dismisses a prosecution on a writ of habeas corpus and the granting of relief "effectively terminates" the proceedings, the State may appeal under article 44.01.  *State v. Young*, 810 S.W.2d 221, 223-24 (Tex. Crim. App. 1991); *see also Alvarez v. State*, 977 S.W.2d 590, 592 (Tex. Crim. App. 1998).

In this case, the district court's order granting habeas relief also dismissed the indictment against Morales, effectively terminating the proceedings.  Thus, article 44.01 authorizes the State to appeal the dismissal.

*Timely notice of appeal*

Morales next asserts that we lack subject matter jurisdiction because the State failed to timely file its notice of appeal.  In appeals authorized under article 44.01, the State's deadline to appeal is not "later than the 15th day after the date on which the order, ruling, or sentence to be appealed is entered by the court." Tex. Code Crim. Proc. Ann. art. 44.01(d).  This requirement is

consistent with Texas Rule of Appellate Procedure 26.2, which provides that, in criminal cases, the State must file its notice of appeal "within 15 days after the day the trial court enters the order, ruling, or sentence to be appealed." Tex. R. App. P. 26.2(b).

The district court orally granted Morales's writ of habeas corpus and dismissed the indictment against him on July 7, 2005. However, the court did not sign a written order until August 2, 2005. The State filed its notice of appeal on the third day thereafter, August 5, 2005. Morales contends that the State's fifteen-day appellate deadline began running on July 7, the date the court orally announced its decision, while the State argues that the appellate timetable did not begin until August 2, the date the court signed its written order. This dispute has already been resolved by the court of criminal appeals, which has held that "the appellate timetable for the State under Art. 44.01(d) begins running from the date the trial judge signs his or her order." *State v. Rosenbaum*, 818 S.W.2d 398, 403 (Tex. Crim. App. 1991). Following *Rosenbaum*, this Court has held that the date an appealable order is "entered by the court" is the date the order is signed by the court. *State v. Rollins*, 4 S.W.3d 453, 454 (Tex. App.—Austin 1999, no pet.). Because the State filed its notice of appeal only three days after the court signed its written order, it timely perfected its appeal. We have jurisdiction over the State's appeal, and now turn to the merits.

**Constitutionality of section 21.12**

In its only issue on appeal, the State contends that the trial court erred in holding section 21.12 to be facially unconstitutional.[5] Contending otherwise, Morales relies on federal

---

[5] The district court's order purports to hold that section 21.12 is unconstitutional both facially and as applied to Morales, but there is no support for the latter ground. Morales

constitutional protections and their Texas counterparts. Because Morales assumes that the Texas constitutional protections are coextensive with the federal counterparts, we need only consider the scope of the federal protections.[6]

### *Standard of review*

Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. *Id*. In the absence of contrary evidence, we will presume that the legislature acted in a constitutionally sound fashion. *Id*. We will uphold a statute if we can determine a reasonable construction that will render it constitutional and carry out legislative intent. *See Sheldon v. State*, 100 S.W.3d 497, 500 (Tex. App—Austin 2003, pet. ref'd) (citing *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979)).

---

acknowledges that only facial constitutionality is properly before us. At the hearing on his habeas petition, Morales disclaimed making an as-applied challenge in light of the procedural posture: because nothing in the indictment had been proven, Morales's counsel admitted that, "I have to . . . argue it facially—that it's facially unconstitutional because we cannot know what—what the facts are as applied to Mr. Morales." Consistent with his position in the district court, Morales argues only facial unconstitutionality on appeal.

[6] *See Ex parte Thompson*, 179 S.W.3d 549, 557 n.20 (Tex. Crim. App. 2005); *Rayford v. State*, 125 S.W.3d 521, 534 (Tex. Crim. App. 2003). Recently, the court of criminal appeals has seemed to hold that a party waives state constitutional grounds by briefing only their federal equivalents. *Shuffield v. State*, 189 S.W.3d 782, 788 (Tex. Crim. App. 2006) ("Because the appellant provides argument and authority under only the United States Constitution, he has forfeited consideration of these points of error under the Texas Constitution."). Whether treated as a matter of waiver or equivalence, our disposition of Morales's arguments under the federal constitution are dispositive of his state grounds as well.

A facial challenge to a statute—the type that Morales asserts here—is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992); *Shaffer v. State*, 184 S.W.3d 353, 364 (Tex. App.—Fort Worth 2006, no pet. h.); *Frieling v. State*, 67 S.W.3d 462, 473 (Tex. App.—Austin 2002, pet. ref'd).

### *Whether a fundamental constitutional right is implicated*

Central to our analysis is whether, as Morales contends, there is a constitutionally cognizable fundamental right to engage in "adult consensual sexual activity." If there is, we must apply a "strict scrutiny" analysis when evaluating Morales's due process challenge, upholding the statute only if its infringement on adult sexual activity is narrowly tailored to serve a compelling state interest. *See Glucksberg*, 521 U.S. at 721. Similarly, if engaging in "adult consensual sexual activity" is a fundamental right, we must, when evaluating Morales's equal protection challenge, apply strict scrutiny when evaluating differences in treatment implicating that right. *See Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988).

Furthermore, if Morales is correct that he has a fundamental right to engage in adult consensual sexual activity that is founded on the First Amendment, it impacts our overbreadth and vagueness analyses. *See Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982); *In re Fisher*, 164 S.W.3d 637, 655 (Tex. 2005). Specifically, in a facial challenge to the overbreadth and vagueness of a law, our first task is to determine whether the enactment reaches a "substantial amount" of conduct protected under the First Amendment. *Hoffman Estates*, 455 U.S. at 494; *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989) (attack on statute as being

overbroad is normally and traditionally reserved for complaints concerning alleged First Amendment violations). If it does not, then the overbreadth challenge must fail. *Hoffman Estates*, 455 U.S. at 494; *Cain v. State*, 855 S.W.2d 714, 717 (Tex. Crim. App. 1993). We should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, uphold the challenge only if the enactment is impermissibly vague in all of its applications. *Hoffman Estates*, 455 U.S. at 494-95; *In re Fisher*, 164 S.W.3d at 655.

Morales urges that a fundamental right to engage in adult consensual sexual activity may be derived from the right to intimate association and the right to privacy, both of which are rooted at least partly in the First Amendment.[7] He also contends that this right is an aspect of the substantive protections of the Due Process Clause of the Fifth Amendment, relying heavily on the *Lawrence v. Texas* decision, which he construes as "upholding a broadly defined right to private, consensual, intimate adult contact" that is "close to, if not the same as, a fundamental First Amendment liberty interest." *See* 529 U.S. 558, 567 (2003). Morales adds that this right, however derived, is made applicable to the State of Texas through the Due Process Clause of the Fourteenth Amendment.

At oral argument, Morales acknowledged that no court has yet explicitly recognized a fundamental right to engage in adult sexual activity, but urges that it is a logical implication or

---

[7] *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (First Amendment includes freedom "from unwanted governmental intrusions into one's privacy"); *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984) (First Amendment includes freedoms of both expressive and intimate association).

extension of prior decisions of the United States Supreme Court regarding the rights to privacy and intimate association, and *Lawrence*. We disagree.

Morales suggests that a fundamental right to engage in "adult consensual sexual activity" is implicit in the right-to-privacy concepts recognized by the Supreme Court in *Griswold v. Connecticut*, 381 U.S. 479, 481-86 (1965), and *Eisenstadt v. Baird*, 405 U.S. 438, 446-55 (1972). These concepts concern "the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Id.* at 453-54. Morales equates this privacy right regarding contraception and procreation to a fundamental privacy right protecting adult sexual conduct. The Supreme Court, however, has heretofore not extended the right to privacy in this manner. To the contrary, it has distinguished between the "constitutionally protected right of decision in matters of childbearing that is the underlying foundation of the holdings in *Griswold*, *Eisenstadt v. Baird*, and *Roe v. Wade*," *Carey v. Population Servs. Int'l*, 431 U.S. 678, 688-89 (1977), and sexual conduct itself. *Id.* at 691 n.17 ("We observe that the Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual behavior] among adults."); *see Muth v. Frank*, 412 F.3d 808, 817 (7th Cir. 2005) (citing *Carey* and agreeing that Supreme Court has not announced "a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct"); *see also Lawrence,* 539 U.S. at 574 ("right to privacy" protects personal decisions related to marriage, procreation, contraception, family relationships, child rearing, and education.).

10

The same is true for the right of intimate association. The First Amendment has been held to protect both "expressive association"—speech, assembly, petition for the redress of grievances, and the exercise of religion—and "intimate association." *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *Kipps v. Caillier*, 205 F.3d 203, 204-05 (5th Cir. 2000). The right to intimate association refers to the freedom to "enter into and maintain certain intimate human relationships." *Roberts*, 468 U.S. at 617. But this right has heretofore been construed to embrace only certain categories of marital and family relationships, not sexual conduct or intimate relationships generally.[8]

---

[8] The Supreme Court has described the scope of the intimate association right:

> The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.

*Roberts*, 468 U.S. at 619-20 (citations omitted); *see also Beecham v. Henderson County*, 422 F.3d 372, 375 (6th Cir. 2005) (right does not protect adulterous relationship); *Marcum v. McWhorter*, 308 F.3d 635, 642 (6th Cir. 2002) (same); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996); *IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1193 (9th Cir. 1988) (right does not protect relationship between escort and client); *Bates v. Bigger*, 192 F. Supp. 2d 160, 170 (S.D.N.Y. 2002) (right does not protect extramarital affairs); *Johnson v. San Jacinto Junior Coll.*, 498 F. Supp. 555, 575 (S.D. Tex. 1980) ("the right to . . . sexual intimacy is grounded on the marriage relation . . . but currently does not protect the sexual relations themselves").

11

The closest the Supreme Court has come to addressing "the difficult question" it recognized in *Carey* regarding the constitutional status of sexual conduct, *see* 431 U.S. at 691 n.17, was in *Lawrence v. Texas*. In *Lawrence*, the Court invalidated a Texas statute criminalizing "deviate sexual intercourse" between individuals of the same gender. 539 U.S. at 574. It relied upon a liberty interest it identified within the Due Process Clause:

> The petitioners are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime. Their right to liberty under the *Due Process Clause* gives them the full right to engage in their conduct without intervention of the government. It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter.

*Lawrence*, 539 U.S. at 578 (internal citations and quotations omitted). The Court's recognition of this liberty interest was informed by a combination of liberty concepts associated with the Due Process Clause, *id.* at 562, and privacy concepts, previously discussed, relating to marriage, procreation, contraception, family relationships, child-rearing, and education. *Id.* at 573. The *Lawrence* Court concluded that "[t]he Texas statute furthers no legitimate state interest which can justify its intrusion into the personal or private life of the individual." *Id.* at 578.

Morales portrays *Lawrence* as recognizing "the fundamental First Amendment right" to engage in sexual conduct (which he would derive from privacy and intimate association rights) and further expanding it to protect "the right of homosexual persons to engage in consensual adult

---

As we further discuss below, section 21.12's exemption for sexual conduct between school employees and their spouses serves to avoid infringing a right to intimate association protecting sexual relationships between married persons. *See* Tex. Pen. Code Ann. § 21.12(a) (" . . . and who is not the employee's spouse").

sexual activity." He adds that this right is "so close to, if not the same as, a fundamental First Amendment liberty interest, any law enacted by a state legislature infringing upon the liberty interest identified in *Lawrence* should be narrowly tailored to serve a compelling state interest, and should come under strict scrutiny when the enacted law infringes upon this fundamental liberty interest." Morales's view of *Lawrence* is flawed.

*Lawrence*'s liberty interest is within the Due Process Clause, not the First Amendment. *Id*. We conclude that section 21.22 does not implicate a substantial amount of conduct protected under the First Amendment, and reject Morales's overbreadth challenge. *See Hoffman Estates*, 455 U.S. at 494-95; *Bynum*, 767 S.W.2d at 772. *Lawrence* also held that this liberty interest is not a fundamental right to which strict scrutiny would apply.

Nowhere in its opinion did the *Lawrence* Court characterize the liberty interest on which it relied as "fundamental." Nor did the Supreme Court employ its typical fundamental-rights analysis and nomenclature. The Court has explained elsewhere:

> Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the critical guideposts for responsible decisionmaking that direct and restrain our exposition of the Due Process Clause.

*Glucksberg*, 521 U.S. at 720-21 (internal citations and quotations omitted). The *Lawrence* court did not attempt to equate sexual conduct with "those fundamental rights and liberties which are . . .

13

deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty," and it did not describe this interest with specificity.

Furthermore, the *Lawrence C*ourt did not apply strict scrutiny, as it would have if a fundamental right had been implicated. Instead, it considered only whether the statute "furthered [a] legitimate state interest" that could "justify its intrusions into the personal and private life of the individual." *Lawrence*, 539 U.S. at 578.

Other courts have similarly concluded that the *Lawrence* liberty interest is not a fundamental right or liberty interest in sexual conduct to which strict scrutiny would apply. *See Muth*, 412 F.3d at 817-18 (*Lawrence* did not recognize "a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct."); *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 815-16 (11th Cir. 2004) ("*Lawrence*'s holding was that substantive due process does not permit a state to impose a criminal prohibition on private consensual homosexual conduct. The effect of this holding was to establish a greater respect than previously existed in the law for the right of consenting adults to engage in private sexual conduct. Nowhere, however, did the Court characterize this right as 'fundamental.'"); *State v. Clickenbeard*, 123 P.3d 872, 879 (Wash. App. 2005, no rev.) ("Because *Lawrence v. Texas* does not establish a fundamental right to all consensual adult sexual conduct, we apply a rational basis review . . . .").

We hold that section 21.12 does not implicate any rights that the Supreme Court has heretofore classified as fundamental. We proceed to apply the appropriate analyses of his due process, vagueness, and equal protection arguments.

### *Due process*

Morales asserts that section 21.12 violates the Due Process Clauses of the Fifth and Fourteenth Amendments. U.S. Const. Amends. V, XIV. The Supreme Court has held that due process has a substantive component. *See*, *e.g.*, *Lawrence*, 539 U.S. at 564 (2003). This aspect of due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Glucksberg*, 521 U.S. at 719. However, a statute affecting an interest that is not a fundamental right is valid if it bears a rational relationship to a legitimate state interest. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Texas Workers Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995); *Scott v. State,* 36 S.W.3d 240, 241 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Sullivan v. State*, 986 S.W.2d 708, 714 (Tex. App.—Dallas 1999, no pet.). That is the standard applied in *Lawrence*, and we conclude that it is our best guide here. *See Lawrence*, 539 U.S. at 578.

The State urges that section 21.12 is rationally related to advancing at least two state interests that it contends are legitimate, if not compelling: (1) preventing sexual exploitation of Texas schoolchildren; and (2) preserving an educational environment conducive to learning.

We begin our analysis by briefly emphasizing some basic features of the challenged statute. Section 21.12 is narrowly addressed to sexual conduct by a specific class of persons— employees of Texas public and private primary and secondary schools— with another specific class of persons—students—which is further limited to those enrolled *at the same school* where an employee works. *See* Tex. Penal Code § 21.12(a). Section 21.12 is thus not a general proscription against or regulation of the private sexual conduct of Texas school employees, nor does it

15

categorically proscribe employees from having sexual relations even with students (as long as the student is not enrolled at a school where the employee works). Section 21.12, in other words, leaves undisturbed a school employee's private choices and sexual conduct with the vast universe of potential partners who are not enrolled as students at the same school where the employee works. *See Lawrence*, 539 U.S. at 578.

We also observe some important limitations on the *Lawrence* holding. While finding a liberty interest that protected the private adult sexual conduct at issue there, the Supreme Court emphasized:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not be easily refused. It does not involve public conduct or prostitution.

*Id.* at 578.

With these features of section 21.12 and *Lawrence* in mind, we evaluate the interests asserted by the State.

*Preventing sexual exploitation of Texas schoolchildren*

The State contends that section 21.12 is rationally aimed at protecting primary and secondary school students from adults who would seek to take sexual advantage of them, particularly those who would abuse the imprimatur of their school employment and their access to students to induce students to engage in sexual activity.[9] The "prevention of sexual exploitation and abuse of

---

[9] Related to this interest, the State also posits that section 21.12 rationally advances the legitimate state interest of avoiding liability exposure for school districts for the sexual harassment or abuse of students by their employees. Morales questions whether section 21.12 rationally

16

children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). And the *Lawrence* Court, again, stressed that "[t]he present case does not involve minors" and "does not involve persons who might be injured or coerced or who are situated in relationships where consent might not be easily refused." 539 U.S. at 578. This language suggests that the sexual exploitation of minors, persons prone to coercion, and those unable easily to refuse consent might not only give rise to legitimate state interests justifying state prohibitions against such conduct, but that this sort of conduct lies outside the scope of the *Lawrence* liberty interest entirely. *See United States v. Bach*, 400 F.3d 622, 628-29 (8th Cir. 2005) (*Lawrence* provided "[n]o support" for defendant's efforts to prevent prosecution for child pornography).

Morales disputes whether section 21.12 is a rational means of preventing school employees from abusing power or authority to coerce or induce students to have sex. He points out that coercion, involuntariness, or undue influence is not an element of section 21.12, nor is it explicitly limited to "special relationships" entailing a power disparity making the refusal of consent difficult. *See* Tex. Pen. Code Ann. § 22.011(b)(9)-(10) (sexual assault is without consent if perpetrator is mental health services provider or clergyman who exploits other person's emotional dependency on actor). Morales questions whether an "employee" of a school district—which, he emphasizes, could include those performing what he terms "menial" jobs such as cafeteria workers, groundskeepers, custodians, or part-time student employees—would possess sufficient power and authority enabling them to obtain sex from students by coercion or undue influence. Morales

advances such an interest, inasmuch as the statute extends both to public and private schools. Because we conclude that section 21.12 rationally advances other legitimate state interests, we need not address these contentions.

17

suggests that if the legislature meant to criminalize coercive or predatory sex in schools, it should have addressed section 21.12 not to mere "employees" but to "educators," persons required to hold a teaching certificate. *See* Tex. Educ. Code Ann. § 5.001(5) (West 2006).[10] Finally, Morales argues that section 21.12 is not rationally related to preventing coercive or predatory sex because, he contends, it imposes strict liability on school employees regardless of their awareness that a person with whom they have sex is enrolled at their school.

Morales's contentions are without merit. The State concedes that section 21.12 and the indictment require it to prove that Morales had sex with B.H. with intent or knowledge regarding the student's enrollment at San Marcos Baptist Academy. *See* Tex. Pen. Code Ann. § 6.02 (West Supp. 2005). The district court relied on this construction of section 21.12 when declaring it unconstitutional, and we will assume the same for purposes of this opinion.

We emphasize again that Morales brings a facial challenge to section 21.12, and thus must demonstrate that the statute is unconstitutional in all of its applications. *Hoffman Estates*, 455 U.S. at 494-95; *In re Fisher*, 164 S.W.3d at 655. Morales does not dispute that the vast majority of students to whom section 21.12 applies are minors: only a comparatively narrow segment of the Texas student-age population is age 17 or above. Section 21.12 is rationally calculated to protect

---

[10] Morales further observes that section 21.12's title is "Improper Relationship Between *Educator* & Student" (emphasis added), suggesting that the legislature may have intended a more limited prohibition. *But see* Tex. Gov't Code Ann. § 311.024 (West 2001) ("The heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute.").

minor students from sexual abuse and exploitation by school employees at their school, a category of persons with unique proximity and access to those children.[11]

As for section 21.12's relationship to preventing coercion and sexual exploitation of students over the age of majority, Morales acknowledges that his position at San Marcos Baptist Academy fell within the education code's definition of "educator," his own exemplar of a position that would wield coercive power over students. The legislature could also have rationally rejected Morales's view of non-educator school employees and concluded that even those employees lacking a teaching certificate will be clothed with the imprimatur of school employment, if not serving as leaders and role models, and will possess the sort of power disparities enabling them to coerce or unduly influence students to engage in sexual conduct.[12]

The legislature could also have rationally considered that school employees, whether possessing a teaching certificate or not, are given unique access to students, and are thereby vested with great trust and confidence by the school, parents, and public, and sought to preserve or strengthen that trust by unequivocally prohibiting school employees from misusing their access to students as a conduit for sex. We again emphasize that section 21.12 is limited specifically to employee sexual conduct with students enrolled at the same school where the employee works, a class of persons uniquely within the proximity and influence of the employee.

---

[11] Morales does not suggest that there is anything *per se* improper about providing specific protections to students in section 21.12 that supplement those available to minors generally under the penal code. *Cf. In re J.M.R.*, 149 S.W.3d 289, 292-95 (Tex. App.—Austin 2004, no. pet.) (section 37.107, education code, is not *in para materia* with general criminal trespass statute).

[12] *See also* Tex. Educ. Code Ann. § 21.055 (West 2005) (authorizing school districts to issue teaching permits to persons who do not hold teaching certificate).

We hold that section 21.12 is rationally related to the legitimate state interest in protecting minor students from sexual abuse and exploitation and in preventing school employees from abusing their positions of trust and authority to coerce or unduly influence students to have sex with them.

*Preserving an educational environment conducive to learning*

The State also argues that section 21.12 rationally advances the legitimate state interest in ensuring a quality education of all Texas schoolchildren by preserving an educational environment conducive to learning. Texans have enshrined in our state constitution the view that "[a] general diffusion of knowledge [is] essential to the preservation of the rights and liberties of the people," and charged the legislature with the "duty . . . to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const. art. VII, § 1; *see also Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799-800 (Tex. 2005) (construing this provision and noting that "especially in this Information Age, education as a fundamental basis for our future has grown by orders of magnitude."). To effectuate its constitutional mandate, the legislature has declared that "[t]he mission of the public education system of this state is to ensure that all Texas children have access to a quality education that enables them to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation. That mission is grounded on the conviction that a general diffusion of knowledge is essential for the welfare of this state and for the preservation of the liberties and rights of citizens. . . ." Tex. Educ. Code Ann. § 4.001(a) (West 2006). To these

ends, the legislature has declared among its "objectives of public education" that "[s]chool campuses will maintain a safe and disciplined environment conducive to student learning." *Id.* § 4.001(b).

The State points out that similar legitimate state interests extend to students in private primary and secondary schools. It emphasizes that Texas has a compulsory school attendance law that generally requires all school-aged persons to attend either a public or private school. *See id.* §§ 25.085, .086 (West 2006). Texas has also enacted legislation aimed at ensuring basic standards of safety and order in both private and public schools. *Id.* §§ 37.123 (West 2006) (providing that certain "disruptive activit[ies] on the campus or property of any private or public school" are class B misdemeanors), .125 (West 2006) (third degree felony to interfere with normal use of private or public school building, portion of campus, building, or school bus being used to transport children to or from school-sponsored activities), .15 -.153 (West 2006) (prohibitions against hazing of students made applicable to both public and private high school students); *see also* Tex. Alco. Bev. Code Ann. § 101.75 (West Supp. 2005) (prohibiting consumption of alcoholic beverages on public streets, alleys and sidewalks within 1,000 feet of certain public or private schools).

The State maintains that section 21.12 is a rational means of ensuring a school environment that is safe and conducive to learning. Pointing to recent highly-publicized episodes of teacher-student sexual relationships in schools around the nation, the State urges that the legislature could have rationally anticipated that such conduct would undermine the learning environment in Texas schools and even cause physical or emotional harm to students. In addition to the harmful effects of sexual predation previously discussed, the State points to the actual or perceived advantage of students who have sex with school employees; conflicts of interest of school

21

employees who either are currently having sexual relationships with students or have "broken up"; the distractions from learning for both student participants and other students who inevitably learn of their conduct; and the encouragement of an atmosphere in which school employees, to paraphrase the State, seek sex in classrooms and cafeteria lines.

Morales discounts the State's asserted interest in preventing detrimental effects on the learning environment, contending it must yield to "the full right to engage in adult sexual conduct without intervention." Central to Morales's contention is his premise that sexual relationships between school employees and students are entirely a "private" or "personal" matter. *See Lawrence*, 539 U.S. at 578. The legislature could have rationally rejected that premise.

As previously suggested, teachers and other school employees are not the sort of private actors at issue in *Lawrence*, but occupy positions of public trust with respect to the students enrolled at their school. Section 21.12 targets conduct at the core of this trust, school employees' conduct with students enrolled at a school where they work. The legislature also could have rationally made the common-sense policy judgment that school employee-student sexual relationships, within the confined environment of the typical Texas high school and typical school-aged population, would hardly be an entirely "private" matter.

In light of these considerations, the legislature could have rationally determined that sexual relationships between students and school employees would undermine the school's learning environment. Even if the participating student or some of his peers are assumed to suffer no detriment, the legislature could have rationally concluded that there would be other students at the school—including younger ones—whose learning and development may be disrupted or disturbed

by revelation of employee-student sexual activities.  The reaction of many students, the legislature could have foreseen, would likely be akin to that described by the United States Supreme Court in a First Amendment case challenging disciplinary action against a high school student for giving a speech to his student body employing "an elaborate, graphic, and explicit sexual metaphor":

> Some students hooted and yelled; some by gestures graphically simulated the sexual activities pointedly alluded to in respondent's speech.  Other students appeared to be bewildered and embarrassed by the speech.  One teacher reported that on the day following the speech, she found it necessary to forego a portion of the scheduled class lesson in order to discuss the speech with the class.

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 677 (1986).  Such an atmosphere would present an unenviable challenge for any Texas teacher attempting to refocus students on calculus and English literature—especially if the teacher was heralded among students for his or her sexual activity with a student.

In *Fraser*, the Supreme Court rejected the student's First Amendment challenge to the disciplinary actions following his speech.  The court reasoned that even the fundamental First Amendment values of "tolerance of divergent political and religious views, even when the views expressed may be unpopular . . . must also take into account consideration of the sensibilities of others, and in the case of a school, the sensibilities of fellow students."  *Id.* at 681.  The Court suggested that "[t]he speech could well be seriously damaging to its less mature audience, many of whom were only 14 years old and on the threshold of awareness of human sexuality."  *Id.* at 683.  It concluded that "[t]he First Amendment does not prevent the school officials from determining that to prevent a vulgar and lewd speech such as respondent's would undermine the school's basic

educational mission." *Id.* at 685. Likewise, the Texas Legislature did not violate the Constitution by seeking to prevent similar disruptions of its schools' basic educational mission and ensuring the physical and emotional well-being of its students, thereby advancing Texas's fundamental value of ensuring a quality education for all Texas schoolchildren.

### *Conclusion regarding due process*

We hold that section 21.12 is rationally related to legitimate state interests and, accordingly, does not violate Morales's due process rights.

## Vagueness

Having concluded that section 21.12 does not reach a substantial amount of conduct protected by the First Amendment, we should uphold Morales's vagueness challenge only if the statute is impermissibly vague in all of its applications. *Hoffman Estates*, 455 U.S. at 494-95; *In re Fisher*, 164 S.W.3d at 655. When a statute is challenged as unconstitutionally vague, our concern is premised on notions of notice and due process. *Cain v. State*, 855 S.W.2d 714, 717 (Tex. Crim. App. 1993); *Bynum*, 767 S.W.2d at 773. A criminal statute is not vague if it gives a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and it provides sufficient notice to law enforcement to prevent arbitrary or discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *State v. Edmond*, 933 S.W.2d 120, 125 (Tex. Crim. App. 1996); *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996). A statutory provision need not be mathematically precise; it need only give fair warning in light of common understanding and practices. *Grayned*, 408 U.S. at 110-11.

The relevant prohibitions of section 21.12, again, state:

> An employee of a public or private primary or secondary school commits an offense if the employee engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works and who is not the employee's spouse.

Tex. Pen. Code Ann. § 21.12(a). The prohibitions of section 21.12 are clear and unequivocal: if you are an employee of a Texas public or private primary or secondary school, you must not engage in sexual conduct with students who are enrolled at a school where you work, unless you are married to them.

"Sexual contact," "sexual intercourse," and "deviate sexual intercourse" are all defined in the penal code. *See id.* § 21.01. Morales, however, contends that section 21.12 is vague because it does not define "employee," and suggests various hypothetical situations where he contends that the application of this term would be impermissibly unclear. For example, Morales suggests the case of a high school student who has a part-time lawn-mowing or dish-washing job at his or her school, and has sex with another student. Morales also posits that application of "enrolled in a public or private primary or secondary school at which the employee works" might be impermissibly unclear if a school employee met and had sex with a student during a holiday recess or if a student had been suspended or had dropped out of school. Morales contends that for these reasons, section 21.12 gives prosecutors "unbridled discretion" to pick and choose which school employee-student sexual relationships to prosecute. Morales fails to demonstrate that section 21.12 is void for vagueness.

25

A statute is not vague merely because its words or phrases are not specifically defined. *See Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1997); *In re Browning*, 113 S.W.3d 851, 864 (Tex. App.—Austin 2003, pet. denied). Statutory words are to be "read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (West 1998). When words are not defined in a statute, they are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense. *Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim. App. 1988); *Ely*, 582 S.W.2d at 419. Words defined in dictionaries with meanings so well known as to be understood by a person of ordinary intelligence have been held not to be vague and indefinite. *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978); *Coggin v. State*, 123 S.W.3d 82, 88 (Tex. App.—Austin 2003, pet. ref'd). As used in section 21.12, "employee" and "enroll" are such terms. Webster's defines "employ" as "to provide with a job that pays wages or a salary." Merriam-Webster Online Dictionary (www.m-w.com/dictionary/employ) (last visited June 16, 2006). It defines "enroll" as "to insert, register, or enter in a list, catalog, or roll <the school *enrolls* about 800 pupils>." *Id.* (www.m-w.com/dictionary/enroll) (last visited June 16, 2006). These definitions square with the ordinary, common-sense understanding of the terms. A person of ordinary intelligence should be able to determine whether or not he or she has been provided with a job at a school that pays wages or a salary, and whether someone with whom he or she is preparing to have sex is registered or entered on the roll of students attending a school at which the employee works.

In any event, Morales's suggestions of hypothetical situations in which he contends section 21.12 would be vague do not support his facial vagueness challenge. A person who engages

in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Bynum*, 767 S.W.2d at 774. When challenging a statute for vagueness, even in a facial challenge, a defendant must show that the statute as it applies to him in his situation is unconstitutional. *See id*. In this case, Morales, an adult employee of San Marcos Baptist Academy, a private secondary school in Hays County, was alleged to have engaged in deviate sexual intercourse with 17-year-old B.H., a student at the same school. B.H. was not Morales's spouse. There is no dispute that the conduct Morales is alleged to have committed is prohibited by section 21.12. Therefore, section 21.12 is not "impermissibly vague in all of its applications," *see Hoffman Estates*, 455 U.S. at 494-95, and Morales's vagueness challenge fails.

### Equal protection

Finally, Morales argues that section 21.12 violates his equal protection guarantee because it proscribes sexual conduct between school employees and students, but exempts employees and students who are married. Because Texas recognizes marriage only between persons of the opposite gender, *see* Tex. Const. Art I, § 32; Tex. Fam. Code Ann. § 2.001(b) (West 1998), Morales contends that section 21.12 impermissibly discriminates against homosexuals. He equates section 21.12's exemption for married couples to the Colorado anti-homosexual initiative invalidated on equal protection grounds in *Romer v. Evans*, 517 U.S. 620 (1996).[13]

---

[13] The enactment in *Romer* specifically targeted homosexuals and prohibited all legislative, executive, or judicial action at any level of state or local government from protecting homosexuals. *Romer v. Evans*, 517 U.S. 620, 624 (1996). The Supreme Court could find no legitimate state purpose for the law, whose sole purpose seemed to be "a bare desire to harm a politically unpopular group." *Id*. at 634. The law was held unconstitutional because it denied homosexuals the ability to participate in the political process. *Id*. at 634-35.

27

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated shall be treated alike" under the law. *Plyler v. Doe*, 457 U.S. 202 (1982); *Wood v. State*, 18 S.W.3d 642, 651 (Tex. Crim. App. 2000). Broadly speaking, this means that "States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997).

Our first step in making an equal protection determination is identifying the appropriate standard of review. A statute is evaluated under strict scrutiny if it implicates a fundamental right or discriminates against a suspect class. *Henderson v. State*, 962 S.W.2d 544, 560 (Tex. Crim. App. 1997); *Smith v. State*, 149 S.W.3d 667, 670-71 (Tex. App.—Austin 2004, pet. ref'd). However, a statutory classification that does not discriminate against a suspect class need only be rationally related to a legitimate governmental purpose to survive an equal protection challenge. *Henderson*, 962 S.W.2d at 560. The claimant must establish clearly that the statute is arbitrary and irrational before an equal protection violation will lie. *See Black v. State*, 26 S.W.3d 895, 898 (Tex. Crim. App. 2000). Those attacking the rationality of a legislative classification have the burden to negate every conceivable basis that might support it. *Anderer v. State*, 47 S.W.3d 60, 66 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

As we have previously explained, section 21.12 does not implicate a fundamental right. Nor does it discriminate against what the Supreme Court has heretofore considered a suspect class. The Supreme Court has evaluated equal protection challenges claiming anti-homosexual discrimination under a rational basis standard, not strict or intermediate scrutiny. *See Romer*, 517 U.S. at 631-35; *see also Lawrence*, 539 U.S. at 579-80 (O'Connor, J., concurring) (explaining that where law evinces desire to harm politically unpopular group, "we have applied a more searching

28

form of rational basis review to strike down such laws under the *Equal Protection Clause*");

*Cleburne,* 473 U.S. at 440-41 (limiting definition of "suspect class" to race, alienage, and national origin). Section 21.12 is vastly different from the enactment at issue in *Romer.* It is the sort of facially neutral provision that this Court has previously sustained against equal protection challenges.

In *Bailey v. City of Austin*, we considered an equal protection challenge[14] to a City of Austin charter amendment that limited the provision of city employee benefits solely to employees' parents, spouses (defined as husbands or wives), children, siblings, grandparents, and parents and grandparents of an employee's spouse. 972 S.W.2d 180 (Tex. App.—Austin 1998, pet. denied). A group of plaintiffs—city employees and their same-sex domestic partners—challenged the amendment, claiming that it discriminated "against homosexuals as a class." *Id.* at 186. We began by considering whether, in fact, the amendment discriminated against homosexuals, and concluded that it did not.

Distinguishing *Romer*, we noted that the amendment "facially excludes the class of *all domestic partners*, heterosexual and homosexual, from the definition of a dependant eligible for employee benefits. The proposition itself does not facially discriminate against homosexuals as a class." *Id.* at 186 (emphasis in original). We also considered whether there was evidence of underlying intent to discriminate against homosexuals, and found none. *Id.* at 186-87. "Accordingly," we held that "the classification at issue consists of all unmarried domestic partners."

---

[14] The *Bailey* plaintiffs relied on the equal protection guarantees of the Texas Constitution, *Bailey*, 972 S.W.2d 180, 186 (Tex. App.—Austin 1998, pet. denied), but this is not a basis for distinguishing *Bailey* from the present case. In *Bailey*, we relied on authorities construing the equal protection clause, not any authorities unique to the Texas provisions. Moreover, Morales, as previously noted, has assumed that the federal constitutional protections he has briefed are coextensive with their Texas counterparts. We have no reason here to think otherwise.

*Id.* at 187. In light of this conclusion, we went on to hold that the classifications drawn by the amendment rationally advanced the government's legitimate interest in "recognizing and favoring legally cognizable relationships such as marriage." *Id.* at 187-90. We also emphasized our limited, deferential role in such inquiries:

> This Court properly exercises only a limited review power over the public when it engages in the democratic process and makes choices among alternative solutions to social and economic problems. In *Schweiker* [*v. Wilson*, 450 U.S. 221 (1981)], Justice Blackmun reiterated the importance of allowing the democratic process to establish public policy:
>
>> In the area of economics and social welfare, a State does not violate the Equal Protection Clause . . . merely because the classifications made by law are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequity."
>>
>> This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. As long as the classificatory scheme . . . rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.
>
> *Schweiker*, 450 U.S. at 234 . . . . Thus, . . . we may not overturn a law unless its classification is so irrelevant to a stated purpose that the distinctions drawn are clearly arbitrary. Under such a limited review, we hold that Proposition 22 is constitutional.

*Bailey*, 972 S.W.2d at 189-90.

As was the case in *Bailey*, section 21.12 does not facially discriminate against or target homosexuals as a class: it prohibits primary and secondary school employees from engaging in sexual conduct with *any* student—male or female, heterosexual or homosexual—to whom they

are not married.  Similar exclusions of married persons appear in other penal statutes regarding sexual conduct,[15] and serve to avoid unconstitutional infringement upon the marital relationship.  *See Roberts*, 468 U.S. at 619; *Zablocki*, 434 U.S. at 383-86; *Loving v. Virginia*, 388 U.S. 1, 12 (1967).  Morales does not suggest that section 21.12 was driven by legislative intent to discriminate against homosexuals.  The classification relevant to our equal protection analysis, therefore, is section 21.12's differential treatment of school employees who have sex with students enrolled at their school to whom they are married versus those having sex with students enrolled at their school to whom they are not married.  Alternatively, the relevant classification is school employees versus the general public, which is not prohibited from having sex with students over the age of consent regardless of where the students are enrolled.

For reasons previously demonstrated, the legislature could have rationally imposed different standards of conduct on the general public versus school employees regarding sex with students enrolled at the employee's school.  The differential treatment of school employees who are married to students versus those who are not also has a rational basis.  As earlier suggested, it is likely necessary to avoid an unconstitutional infringement upon the marital relationship.  *Roberts*, 468 U.S. at 619; *Zablocki*, 434 U.S. at 383-86; *Loving*, 388 U.S. at 12.  Additionally, the legislature could have rationally determined that if school employees and students are married to each other, legal safeguards incident to marriage would have precluded sex based on coercion or lack of

---

[15] *See* Tex. Pen. Code Ann. §§ 21.11(a) (indecency with a child applicable to conduct "with a child younger than 17 years of age who is not the person's spouse"), 22.011 (sexual assault of a "child" defined as a person younger than 17 years of age who is not the spouse of the actor).

31

consent.[16] These classifications are rationally related to legitimate government purposes, and section 21.12 does not violate equal protection. *See Cleburne*, 473 U.S. at 446.

## CONCLUSION

For the foregoing reasons, we hold that Morales's facial constitutional challenges to section 21.12 are without merit and sustain the State's issue. We reverse the district court's order dismissing the indictment against Morales and remand the case for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton: Opinion by Justice Pemberton; Concurring Opinion by Justice Patterson

Reversed and Remanded

Filed: July 21, 2006

Publish

---

[16] *See* Tex. Fam. Code Ann. §§ 2.003 (West 1998) (license application requirements for minors), 2.101 (West 1998) ("Except as otherwise provided by this subchapter or on a showing that a prior marriage has been dissolved, a county clerk may not issue a marriage license if either applicant is under 18 years of age."), 2.102(a) (West Supp. 2005) (parental consent required for applicant over 16 years of age but under 18 years of age), 6.102 (West Supp. 2005) (annulment of marriage of person under age 18).