

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00396-CR
### NO. 02-12-00397-CR
### NO. 02-12-00398-CR
### NO. 02-12-00399-CR
### NO. 02-12-00400-CR

BRITTNI COLLEPS                                                 APPELLANT

V.

THE STATE OF TEXAS                                             STATE

------------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two issues, Appellant Brittni Colleps appeals her convictions for improper relationship between educator and student, arguing that penal code section 21.12 is unconstitutional and that the State improperly shielded all of the alleged complainants from prosecution for improper visual recording. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

At the end of April and beginning of May in 2011, Colleps, a first-year teacher, engaged in various sexual encounters with the complainants—Aaron, Mark, John, Jordan, and Richard[2]—who were high school seniors in her English class.[3]

During one of the group sex episodes, Jordan used Aaron's cell phone to make a recording; the trial court admitted the recording and allowed it to be published to the jury. The State agreed to give the complainants transactional immunity, which the trial court approved. The State did not offer to plea bargain with Colleps.

A jury convicted Colleps of multiple counts of improper relationship between educator and student as follows: four counts as to Aaron, three counts as to Mark, four counts as to John, four counts as to Jordan, and one count as to Richard. The jury assessed Colleps's punishment at five years' confinement for each count in each case, and the trial court set each sentence in each count and case to run concurrently. These appeals followed.

---

[2]The students were identified by these pseudonyms at trial. At the time, Mark, John, Jordan, and Richard were eighteen years old and Aaron was nineteen years old.

[3]Because Colleps does not challenge the sufficiency of the evidence to support her convictions, we will not recount the details of the sexual encounters.

## III.  Penal Code Section 21.12

In her first issue, Colleps concedes the facial constitutionality of penal code section 21.12 but argues that the statute is unconstitutional as applied to her because it criminalizes consensual adult behavior without regard to the age of the alleged victims and that her due process rights were violated when the State selectively and vindictively prosecuted her for engaging in "multiple sex acts with five willing adult male students."

### A.  Standard of Review

The court of criminal appeals has stated,

> Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily.  The burden rests upon the individual who challenges the statute to establish its unconstitutionality.  In the absence of contrary evidence, we will presume that the legislature acted in a constitutionally sound fashion.

*Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) (citations omitted). "Because a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts, a litigant must show that, in its operation, the challenged statute was unconstitutionally applied to him."  *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011).

### B.  Penal Code Section 21.12

Penal code section 21.12, "Improper Relationship Between Educator and Student," prohibits a secondary school employee from engaging in sexual conduct, sexual intercourse, or deviate sexual intercourse with students enrolled

3

at the school where she works.  Tex. Penal Code Ann. § 21.12(a)(1) (West 2011 & Supp. 2013); *Ex parte Morales*, 212 S.W.3d 483, 486 (Tex. App.—Austin 2006, pet. ref'd).  In *Morales*, a school employee who had engaged in sexual conduct with one of his school's seventeen-year-old students argued that section 21.12 violated a constitutionally cognizable fundamental right to engage in adult consensual sexual activity—a right that he argued was a logical extension of *Lawrence v. Texas*, 539 U.S. 558, 567, 123 S. Ct. 2472, 2478 (2003).  *Morales*, 212 S.W.3d at 487, 490–91, 500.  However, the Austin court concluded that *Lawrence*'s "right to privacy," which protects personal decisions related to marriage, procreation, contraception, family relationships, child-rearing, and education, has not been extended to sexual conduct or intimate relationships generally and is not a fundamental right to which strict scrutiny applies.  *Id.* at 491–94 (citing *Lawrence*, 539 U.S. at 574, 578, 123 S. Ct. at 2481–82, 2484, as invalidating a Texas statute criminalizing private consensual homosexual conduct under the rational basis test).  The court concluded that section 21.12 was rationally related to two legitimate state interests—preventing sexual exploitation of Texas schoolchildren and preserving an educational environment conducive to learning.  *Id.* at 494, 496–97.

The court reached this conclusion first by reasoning that section 21.12 was narrowly addressed to sexual conduct by one specific class of persons—school employees—with another specific class—students, further limited to those enrolled at the same school where the employee works.  *Id.* at 494.  It observed

4

that in *Lawrence*, the Supreme Court specifically stated that the liberty interest in private adult sexual conduct in that case did not involve minors or "persons who might be injured or coerced or who are situated in relationships where consent might not be easily refused." *Id.* (citing *Lawrence*, 539 U.S. at 578, 123 S. Ct. at 2484). The court reasoned that because school employees "are given unique access to students, and are thereby vested with great trust and confidence by the school, parents, and public," the legislature had a legitimate interest in seeking to preserve or strengthen that trust by unequivocally prohibiting school employees from misusing their access to students as a conduit for sex. *Id.* at 496.

Further, in reviewing the state constitution's charge to the legislature to establish and provide for public-school support and maintenance, the legislature's compulsory school-attendance requirement and its decree that school campuses will maintain a safe and disciplined environment conducive to learning, and the distractions and conflicts of interest inherent in sexual relationships between school employees and students, the court concluded that the legislature could have rationally determined that sexual relationships between students and school employees would undermine the school's learning environment. *Id.* at 496–98 (citing Tex. Const. art. VII, § 1, and Tex. Educ. Code Ann. § 4.001 (West 2006)).

5

## C. Analysis

Colleps contends that section 21.12 "criminalizes adult consensual behavior without regard for the age or sexual maturity of the alleged victims." She attempts to distinguish *Morales*, arguing that here

> there are five alleged victims, all of them consenting adults aged eighteen and older at the time of the offenses, four of whom participated in consensual group sex with [her], four of whom conspired to record or conceal the evidence of the recording of one of the group trysts, all of whom were graduating from high school within weeks of the offenses, and none of whom wanted [her] prosecuted.

Colleps further argues that while the statute has a rational basis when legislatively drawn to protect students and the learning environment, the "personal moral revulsion" of the prosecutor here turned the prosecution into persecution because the State refused to offer her a plea bargain. She also claims that the law has a fundamental flaw in that conduct is rendered illegal based solely on school-employment status, pointing out that her conduct would have been legal if the students had already graduated, if the students had been from a different school district, or if she had been fired before engaging in sexual relations with the students.

In making these arguments, Colleps ignores the reasoning underlying the statute as set out in *Morales*—it is a school employee's status that provides access to students at the school and the ability to sexually manipulate those students and disrupt their educational environment. The record reflects that Colleps used her position as an educator to seduce five students in violation of

6

section 21.12—in addition to the five complainants' testimonies, the school district's associate superintendent of administrative services testified that teachers were not permitted to have any kind of sexual contact or any sexual relationship with a student, irrespective of the student's age, and that there were strict restrictions on text messaging between teachers and students. He stated that the statute and the school's policies were in place to protect students because teachers had more power than students, they were in a position of authority, and "[s]tudents look up to teachers . . . they look to us for guidance, and any kind of violation of that is -- it's a situation where it puts the students in a position where they could be harmed." The record also contains text messages between Colleps and Aaron regarding her final exam and how she would do anything she could for him and the sexual text messages that they exchanged during her class. Colleps also sent text messages to Mark, who gave Aaron's phone number to Colleps.

Further, as pointed out by the State, "A prosecutor's disgust with a defendant's criminal behavior does not render a statute unconstitutional." Selective or vindictive prosecution is not a defense on the merits to the criminal charge; rather, it is an independent assertion that the prosecutor has brought the charge for reasons that the Constitution prohibits. *Ex parte Quintana*, 346 S.W.3d 681, 685 (Tex. App.—El Paso 2009, pet. ref'd). To the extent that Colleps raised and preserved a selective or vindictive prosecution claim, she had the burden to prove purposeful discrimination and to defeat the presumption that

7

the prosecution was made in a good-faith and nondiscriminatory fashion. *See id.*
To establish such a prima facie case, Colleps had to show that the State singled her out for prosecution even though it had not proceeded against others similarly situated to her based on the type of conduct for which she was charged and that the government's discriminatory selection was invidious, i.e., based on impermissible considerations such as race, religion, the desire to prevent her exercise of constitutional rights, or some arbitrary classification. *See id.* Only a rational basis for the discriminatory treatment is required unless the government discriminates against a suspect class or impinges on a fundamental right. *Id.* The likelihood that the individual prosecuted will receive the media's attention is a proper basis for selective prosecution because of the potential deterrent effect on others in society. *Id.*

Nothing in the record shows that Colleps—a white, married female with three children—was discriminated on any basis other than that set out by the statute (educator), which, as discussed above, has been found rationally related to the legitimate state interest of protecting students from school employees who might otherwise use their positions to sexually prey on them. As set out above, Colleps had no fundamental right to sexual intercourse with students at her school, and nothing in the record shows similar cases under section 21.12 in

8

which the prosecutor elected to plea bargain instead of proceeding to trial.[4]  We overrule Colleps's first issue.

## IV.  Transactional Immunity

In her second issue, Colleps complains that the State improperly shielded the complainants from prosecution for the felony offense of improper visual recording by offering them transactional immunity and obtaining appointed counsel for them when it learned that she would offer into evidence text messages showing that two of the students had conspired to record one of their sexual episodes.[5]  An immunity agreement between a witness and the State generally does not involve the defendant's rights; rather, the defendant has the right to confront the witness at trial as to the immunity agreement and its conditions.  *Goff v. State*, 931 S.W.2d 537, 549 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1171 (1997).

Further, while a defendant has grounds to complain about the treatment of a witness's immunity when the government uses its immunity privilege to unfairly

---

[4]A defendant has no absolute right to enter into a plea bargain. *Gaal v. State*, 332 S.W.3d 448, 457 (Tex. Crim. App. 2011) (quoting *Morano v. State*, 572 S.W.2d 550, 551 (Tex. Crim. App. [Panel Op.] 1978)); *see also Morano*, 572 S.W.2d at 551 ("It is no more reasonable to argue that the State must enter into a plea bargain with every defendant than to argue that every defendant must plead guilty and enter into a plea bargain.").

[5]Although Colleps contends that the "willingness to immunize their witnesses only after the extent of their criminal acts was revealed is indicative of the degree of vindictiveness and disparate treatment meted out to [her]," we have already addressed her selective- or vindictive-prosecution argument in our resolution of her first issue.

skew the facts presented to the jury and breach the defendant's right to due process of law, *see United States v. Bustamante*, 45 F.3d 933, 943 (5th Cir.), *cert. denied*, 516 U.S. 973 (1995), there is no indication that immunizing the complainants here unfairly skewed any of the facts. Even if the recording had not been admitted into evidence, there was ample evidence for the jury to find beyond a reasonable doubt that Colleps had engaged in sexual activities with five students, regardless of whether she gave permission to record, or was aware of the recording of, one of their instances of group sex.[6] We overrule Colleps's second issue.

## V. Conclusion

Having overruled both of Colleps's issues, we affirm the trial court's judgments.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 3, 2014

---

[6]Some of the complainants testified that they thought Colleps knew she was being recorded although they agreed that her back was turned away from the cell phone at the time.