PD-1051-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/9/2015 3:15:04 PM
Accepted 9/14/2015 11:40:23 AM
ABEL ACOSTA
CLERK

NO. PD-1051-15

IN THE COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXAS

---

NOS. 09-14-00414-CR, 09-14-00415-CR,
09-14-00416-CR, 09-14-00417-CR & 09-14-00418-CR

ON APPEAL FROM THE COURT OF APPEALS FOR
THE NINTH DISTRICT OF TEXAS AT BEAUMONT

---

CHRISTOPHER LEE SUTTON

v.

THE STATE OF TEXAS

---

*Arising from:*

Cause No. 13-02-01974 (Counts I-V)
IN THE 359TH DISTRICT COURT,
MONTGOMERY COUNTY, TEXAS

---

STATE'S PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

September 14, 2015

ABEL ACOSTA, CLERK

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas

**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas
T.B.C. No. 24087284
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)

**Oral Argument Requested**

**IDENTITY OF JUDGE, PARTIES, AND COUNSEL**

Pursuant to Tex. R. App. P. 68.4, the State hereby lists all parties to this appeal with the names of all trial and appellate counsel:

Presiding judge in the trial court:

**THE HONORABLE KATHLEEN HAMILTON**
359th District Court
Montgomery County, Texas

District Attorney:

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Counsel for the State in the trial court:

**JEFF HOHL**
**TIANA SANFORD**
Assistant District Attorneys
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Counsel for the State in the appellate courts:

**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301

Counsel for the appellant in the trial court:

**BILL PATILLO**
430 N. Main Street
Conroe, Texas 77301

Counsel for the appellant in the appellate courts:

**CHRIS ALLEN**
430 N. Main Street
Conroe, Texas 77301

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.............................................. ii

TABLE OF CONTENTS ....................................................................... iii

INDEX OF AUTHORITIES................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT.................................................1

STATEMENT OF PROCEDURAL HISTORY ........................................................1

STATEMENT OF THE CASE................................................................2

GROUNDS FOR REVIEW ..................................................................3

    1.  The Ninth Court of Appeals, in a 2-1 decision, incorrectly interpreted section 21.12(a) of the Penal Code to require the accused to be an official employee of a particular school, rather than the school district, to be considered an "employee of a public or private primary or secondary school." .............................3

    2.  The lower court abandoned the correct standard of review in holding that the jury could not reasonably infer the appellant worked at a particular school where the evidence showed he was required to supervise police activities at that school and he was known to have been physically present on campus while exercising his employment duties. ...............................3

SUMMARY OF THE STATE'S ARGUMENT.......................................................3

ARGUMENTS AND AUTHORITIES ...........................................................4

CONCLUSION AND PRAYER ...............................................................15

CERTIFICATE OF COMPLIANCE WITH RULE 9.4...........................................16

CERTIFICATE OF SERVICE ...............................................................16

# INDEX OF AUTHORITIES

## <u>Cases</u>

*Boykin v. State*,
   818 S.W.2d 782 (Tex. Crim. App. 1991) ..................................................................6

*Ex parte Morales*,
   212 S.W.3d 483 (Tex. App.—Austin 2006, pet. ref'd) ........................................11

*Kirsch v. State*,
   357 S.W.3d 645 (Tex. Crim. App. 2012) ..............................................................6

*Murray v. State*,
   457 S.W.3d 446 (Tex. Crim. App. 2015) ............................................................10

*Sutton v. State*,
   Nos. 09-14-00414-CR through 09-14-00418-CR,
   2015 WL 4311170 (Tex. App.—Beaumont July 15, 2015, no pet. h.) ........ passim

## <u>Statutes</u>

Tex. Gov't Code Ann. § 311.011 (West 2013)..........................................................6

Tex. Gov't Code Ann. § 312.005 (West 2013)..........................................................6

Tex. Penal Code Ann. § 21.12 (West Supp. 2014)........................................... 1, 5, 10

TO THE HONORABLE JUSTICES OF THE COURT OF CRIMINAL APPEALS:

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be beneficial because this case requires substantial discussion of the record that can best be addressed by counsel at oral argument.

## STATEMENT OF PROCEDURAL HISTORY

The appellant was charged with five counts of the felony offense of improper relationship between educator and student[1] (C.R. 32). He entered a plea of not guilty, but the jury found him guilty in all five counts and assessed his punishment in each count at imprisonment for ten years, probated for a period of ten years (5 R.R. 33; 7 R.R. 147).

The appellant appealed his conviction and sentence. The Ninth Court of Appeals, in a 2-1 decision, reversed the trial court's judgment in a published opinion authored by Chief Justice Steve McKeithen on July 15, 2015, and rendered a judgment of acquittal in all five counts. *See Sutton v. State*, Nos. 09-14-00414-CR through 09-14-00418-CR, 2015 WL 4311170, at *2 (Tex. App.—Beaumont July 15, 2015, no pet. h.) (not yet published). Justice Leanne Johnson authored the dissenting opinion.[2] *See id.* at *2–6 (Johnson, J., dissenting). The State did not file a motion for rehearing.

---

[1] *See* Tex. Penal Code Ann. § 21.12(a)(1) (West Supp. 2014).

[2] A copy of each opinion is attached to this petition as Appendix A.

1

# STATEMENT OF THE CASE

The appellant, a Conroe Independent School District police sergeant, and G.T., a student enrolled at Caney Creek High School within Conroe I.S.D., engaged in a sexual relationship over the course of a few months during G.T.'s senior year (3 R.R. 22–27). On appeal, the appellant challenged the sufficiency of the evidence to support his conviction. He conceded that he engaged in sexual intercourse with G.T. and limited his complaint to the jury's finding that the appellant was an employee who worked at Caney Creek High School. The Ninth Court of Appeals' majority opinion sustained the appellant's sufficiency complaint, reasoning that the appellant did not office at Caney Creek High School and was considered to be an employee of the Conroe I.S.D. Police Department. *See Sutton*, 2015 WL 4311170, at *2. Justice Johnson dissented, concluding that the appellant was a school employee based on his employment by the district, and that the jury could reasonably infer that the appellant worked at Caney Creek High School while G.T. was enrolled there.[3] *See id.* at *5 (Johnson, J., dissenting).

---

[3] The dissenting opinion further addressed the appellant's second issue—a challenge that section 21.12(a) is unconstitutionally vague—and again rejected the appellant's claim. *See Sutton*, 2015 WL 2015 WL 4311170, at *6 (Johnson, J., dissenting).

2

## GROUNDS FOR REVIEW

1. The Ninth Court of Appeals, in a 2-1 decision, incorrectly interpreted section 21.12(a) of the Penal Code to require the accused to be an official employee of a particular school, rather than the school district, to be considered an "employee of a public or private primary or secondary school."

2. The lower court abandoned the correct standard of review in holding that the jury could not reasonably infer the appellant worked at a particular school where the evidence showed he was required to supervise police activities at that school and he was known to have been physically present on campus while exercising his employment duties.

## SUMMARY OF THE STATE'S ARGUMENT

*Issue One:* The plain language of Penal Code section 21.12(a)(1) establishes two requirements for an individual to be subject to prosecution: (1) he must be an employee of a school, and (2) he must work at the school in which his victim is enrolled. The lower court's majority opinion suggests that the first requirement is not met when the accused is considered to be an employee of a school district, rather than a particular school. The court's interpretation must be incorrect because, otherwise, no public school teacher in the state would be subject to prosecution for having sex with his or her students.

*Issue Two:* The court of appeals disregarded this Court's rules for sufficiency review by viewing the evidence in a light other than that most favorable to the verdict, dismissing inferences contrary to its own, viewing pieces of evidence in isolation rather than cumulatively, and elevating direct evidence

3

over circumstantial evidence. Under the appropriate standard, the jury could reasonably infer that the appellant worked at Caney Creek High School while G.T. was enrolled there.

**ARGUMENTS AND AUTHORITIES**

**I.** **The lower court's incorrect interpretation that an official employee of a public school district is not "an employee of a public or private primary or secondary school" is nonsensical and would lead to widespread misapplication of section 21.12.**

The majority opinion of the Ninth Court of Appeals strongly suggests that, because the appellant was technically employed by Conroe I.S.D. and was not officially considered to be an employee of Caney Creek High School, the jury could not consider him to be "an employee of a public or private primary or secondary school" under section 21.12(a). *See Sutton*, 2015 WL 4311170, at *1–2. But this construction must be incorrect.

The structure of section 21.12(a) establishes a threshold requirement when analyzing whether an individual is subject to prosecution for improper relationship between educator and student. Section 21.12(a) provides:

> an employee of a public or private primary or secondary school commits an offense if the employee:
>
>> (1) engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works;

4

(2) holds a certificate or permit issued as provided by Subchapter B, Chapter 21, Education Code, or is a person who is required to be licensed by a state agency as provided by Section 21.003(b), Education Code, and engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person the employee knows is:

> (A) enrolled in a public primary or secondary school in the same school district as the school at which the employee works; or
>
> (B) a student participant in an educational activity that is sponsored by a school district or a public or private primary or secondary school, if:
>
>> (i) students enrolled in a public or private primary or secondary school are the primary participants in the activity; and
>>
>> (ii) the employee provides education services to those participants; or

(3) engages in conduct described by Section 33.021, with a person described by Subdivision (1), or a person the employee knows is a person described by Subdivision 2(A) or (B), regardless of the age of that person.

Tex. Penal Code Ann. § 21.12(a). By its terms, the threshold question for the applicability of section 21.12 is whether the accused is "an employee of a public or private primary or secondary school." *See id.* If so, the next question is whether the school employee's conduct fits under subsections (1), (2), or (3). *See id.*

The statute does not define the phrase "employee of a public or private primary or secondary school." Undefined terms in a statute are typically given their ordinary meaning, unless a different definition is apparent from the term's use

5

in the context of the statute. *See* Tex. Gov't Code Ann. § 311.011 (West 2013). Jurors "may freely read [undefined] statutory language to have any meaning which is acceptable in common parlance." *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). When construing a statute, the reviewing court's primary objective is to ascertain and give effect to the legislature's intent. *See* Tex. Gov't Code Ann. § 312.005 (West 2013). To further this objective, the Court may consider how a particular interpretation would lead to absurd consequences that the legislature, in the context in question, could not possibly have intended. *See* *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

The plain language of section 21.12(a)'s threshold requirement admittedly does not state that the section applies to a school *district* employee, but it also does not require the accused to be an employee of any particular school. When considered as a whole, it is clear that the legislature intended for the statute to apply to a broad class of "school employees," and its applicability does not hinge on an individual's official employment classification within the school system. To construe the statute otherwise would lead to an absurd result.

To illustrate, under the Ninth Court of Appeals' interpretation, virtually none of the public school employees in the state would be subject to prosecution for the offense of improper relationship between educator and student. The evidence at trial established that all school employees, district-wide, are paid by the district and

6

are officially considered to be employees of the *district*—not any particular school—by the human resources department (3 R.R. 176–78). Even a teacher who maintains a classroom and spends the overwhelming majority of his or her working hours at a particular school is officially considered to be an employee of the district (3 R.R. 176–78). The evidence—and common knowledge—shows that similar employment structures appear in nearly all school districts throughout the state. Thus, preserving the lower court's holding would essentially limit section 21.12's application to single-school districts and individual private schools.

Surely, the legislature could not have intended, or even anticipated, such a narrow application. To avoid this absurd result, the proper interpretation is set forth in Justice Johnson's dissent: "Because public school employees are employees of the particular school districts where they work, in order for subpart (a)(1) of the statute to mean what it says, i.e., that it applies to an employee of a public school, the statute must also necessarily include employees of public school districts." *Sutton*, 2015 WL 4311170, at *2 (Johnson, J., dissenting).

Under this framework, the appellant's status as a school employee is especially apparent under the circumstances of this case. The evidence showed that he was paid by the district, he was required to acknowledge and abide by district-wide policies and procedures applicable to all school employees, his physical presence on school campuses was required according to the supervisory

7

nature of his position, and he spearheaded extracurricular programs in which he directly monitored school students and facilitated their participation (3 R.R. 167–73, 212–17, 224–26). From this evidence, a rational jury could have easily found that the appellant was a school employee according to the ordinary meaning of the phrase. The Ninth Court of Appeals erred insofar as it concluded that the appellant was not subject to prosecution under section 21.12(a).

It could be argued, as Justice Johnson's dissent suggests, that the majority opinion bypassed this issue. But the lower court's majority devotes a substantial portion of its opinion to the evidence relating to the appellant's method of receiving payment and his official capacity according to the Conroe I.S.D.'s human resources department. In fact, the majority appears to place great weight on the conclusory testimony offered by G.T. and Carrie Galatas, the custodian of records for Conroe I.S.D., because Galatas testified that the appellant was not employed by Caney Creek, and G.T. testified that the appellant did not work for Caney Creek and that G.T. never saw him working there. *See id.* at \*1–2. These facts relate directly to the appellant's status as a school employee. Moreover, in its final conclusion, the majority opinion definitively concludes that the appellant "was an employee of C.I.S.D. Police Department." *Id.* at \*2. In doing so, the majority erroneously relied on the definition of "employee" apparently utilized by those two witnesses, rather than the ordinary meaning of those terms as attributed by the jury.

8

The majority opinion, at the very least, strongly suggests that the appellant could not be prosecuted under section 21.12(a) because he is not "an employee at a public or private primary or secondary school."

Thus, a logical reading of the majority's opinion would preclude prosecution of nearly all teachers and educators who use their authoritative powers to coax their students into engaging in sexual acts. This Court should address the issue to prevent this unintended result, which would effectively curtail nearly all application of section 21.12.

However, even if the majority's decision was limited to whether the evidence supported the jury's finding that "[G.T.] was enrolled in a . . . school at which the [appellant] works," the Ninth Court's erroneous analysis nevertheless necessitates reversal.

## II. The Ninth Court of Appeals improperly limited its sufficiency review and disregarded the jury's reasonable inference that the appellant was physically present at Caney Creek High School while working.

In addition to erroneously concluding that the appellant was not a school employee under section 21.12, the lower court's majority opinion abandoned the appropriate standard when evaluating the sufficiency of the evidence to support the jury's finding that G.T. was enrolled in a school at which the appellant works.

The appropriate standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). This standard tasks the factfinder—not the reviewing court—with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts. *Id.* The role of the reviewing court is to "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence *when viewed in the light most favorable to the verdict.*" *Id.* (emphasis added). "[A]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence because that approach does not consider the cumulative force of all the evidence." *Id.* When the record supports conflicting inferences, this Court presumes that the factfinder resolved the conflicts in favor of the verdict and must defer to that determination. *Id.*

As previously stated, section 21.12 prohibits sexual activity between a school employee and "a student enrolled in the school at which the employee works." *See* Tex. Penal Code Ann. § 21.12(a)(1). Hence, the critical inquiry here is whether the plain and ordinary meaning of the phrase "at which the employee works" includes the appellant's employment-based affiliation with Caney Creek High School.

In deciding that no rational jury could have found that the appellant worked at Caney Creek High School, the court of appeals appeared to rely on two isolated

10

facts: (1) the appellant and the district police department did not office at Caney Creek High School, and (2) the appellant was an employee of C.I.S.D. Police Department and was not primarily assigned to Caney Creek High School. *See Sutton*, 2015 WL 4311170, at \*2. However, the fact that the appellant did not office at Caney Creek cannot possibly render unreasonable the jury's finding that the appellant nevertheless "worked" there. Many employees hold no office at all, or hold an office at one location but ostensibly work at another, such as a surgeon who maintains an independent practice yet performs surgery at various hospitals. Furthermore, the court of appeals' reliance on the appellant's formal geographical assignment and the assumption that the appellant was an employee of the police department—notwithstanding the conflicting evidence that the appellant was rather an official employee of the school district—unjustifiably limits the statute's application in a manner that was not intended by the legislature. The plain language of section 21.12(a)(1) does not limit its application to those who *primarily* or *exclusively* work at a particular school, and the legislature intended for the statute to reach those who hold positions of authority over school students. *See Ex parte Morales*, 212 S.W.3d 483, 496 (Tex. App.—Austin 2006, pet. ref'd). The appellant's prosecution in this case is consistent with that intent.

Although Justice McKeithen's majority opinion lacks a thorough discussion of whether the term "at" in "at which the employee works" requires the employee's

11

physical presence, the decision appears to suggest that the jury could not reasonably infer that the appellant worked at Caney Creek High School because no direct evidence definitively established the appellant's physical presence at the campus while he was working. But the lower court's reasoning is flawed for two reasons.

First, G.T. testified that the appellant repeatedly picked him up from the campus in the appellant's district-issued patrol car and uniform, while he was the sole commander "on call" and was expected to respond to any incidents that occurred at Caney Creek (3 R.R. 35–36, 77). Any conflicting evidence went to the weight and should have been left within the jury's purview. Second, the jury could have reasonably inferred the appellant's physical presence at Caney Creek High School during normal working hours, because the evidence showed that the nature of the appellant's position required his presence on all campuses throughout the district; he mentored and supervised the officer assigned to Caney Creek; and the chief of police testified that he "know[s]" the appellant went to the campus based on his supervisory duties despite being unable to place him there on any particular date through official documentation (3 R.R. 215–17, 224–26). By deciding to the contrary, the court of appeals erroneously elevated direct evidence over circumstantial evidence and improperly limited the jury's role as the factfinder.

And yet, the most troublesome aspect of the court's decision is that it seems to ignore a multitude of facts that support the jury's finding. The evidence in this case, when properly viewed in the light most favorable to the verdict, established the following: the appellant's responsibilities necessarily extended to Caney Creek High School; he had direct contact with G.T. as a result of his authoritative position via two extracurricular programs that the appellant directed—including one incident in which the appellant shared a hotel room with G.T. on a school-sponsored trip to a conference in San Antonio; and the appellant—a trained law enforcement officer—admittedly knew his conduct was illegal (3 R.R. 42–44, 60-61, 192–97, 205, 212–17). The cumulative effect of all the evidence supports the jury's finding that the appellant was a school employee who worked at Caney Creek High School during the time of G.T.'s enrollment.

The lower court's majority opinion suggests that the existence of section 21.12(a)(2) indicates the legislature contemplated scenarios involving a district employee who is not assigned to a particular campus and chose not to include a roving police officer's conduct. *See Sutton*, 2015 WL 4311170, at \*2. But the existence of subsection (a)(2) does not remove the appellant from prosecution under subsection (a)(1). Such an exclusion is plainly absent from the statute's terms; a scenario involving criminal behavior that overlaps the two sections is readily apparent, such as a licensed school nurse who is assigned exclusively to a

13

particular campus and has sex with a student enrolled at the same campus. Moreover, subsection (a)(2) criminalizes sexual activity between individuals who may have never had any contact through the school system, where the perpetrator is one of the listed licensed individuals who has no connection to the specific school at which the victim is enrolled. By contrast, the evidence in this case established that the appellant had a direct, authoritative connection to Caney Creek High School and its students, including G.T., specifically. The State chose to prosecute the appellant under subsection (a)(1) because it applied, not because police officers were inconveniently omitted from subsection (a)(2).

Ultimately, the jury's construction of section 21.12(a)(1)'s terms is acceptable in common parlance and supports the finding that the State proved each element of the offense beyond a reasonable doubt. To ignore this issue would invite numerous wrong decisions, considering there are a multitude of school-based positions—maintenance workers, landscaping workers, unlicensed teacher's aides, administrative assistants, other police officers, etc.—who would escape prosecution and be permitted to use their positions to coerce or persuade students into engaging in sexual activity. Undoubtedly, the legislature did not intend to authorize such conduct, and this Court should address the issue to prevent widespread exploitation of the Ninth Court of Appeals' erroneous decision.

14

## CONCLUSION AND PRAYER

It is respectfully submitted that this Court should reverse the opinion of the Court of Appeals and affirm the trial court's judgment of conviction.

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas


*/s/ Brent Chapell*
**BRENT CHAPELL**
T.B.C. No. 24087284
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)
brent.chapell@mctx.org

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

I hereby certify that this document complies with the requirements of Tex. R. App. P. 9.4(i)(2)(B) because there are <u>2,923</u> words in this document, excluding the portions of the document excepted from the word count under Rule 9(i)(1), as calculated by the Microsoft Word computer program used to prepare it.

*/s/ Brent Chapell*
**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served electronically on counsel for the appellee on the date of the submission of the original to the Clerk of this Court.

*/s/ Brent Chapell*
**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas

16

**Appendix A**

Opinion of the Court of Appeals for the Ninth District of Texas

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO.  09-14-00414-CR
NO.  09-14-00415-CR
NO.  09-14-00416-CR
NO.  09-14-00417-CR
NO.  09-14-00418-CR

_____

CHRISTOPHER LEE SUTTON, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-02-01974 CR (Counts I-V)**

**OPINION**

A jury convicted Christopher Lee Sutton of five counts of improper relationship between educator and student. In two appellate issues, Sutton challenges the legal sufficiency of the evidence and the constitutionality of section 21.12 of the Texas Penal Code. We reverse the trial court's judgment and render a judgment of acquittal.

Legal Sufficiency

In issue one, Sutton contends that the evidence is legally insufficient to support his conviction for improper relationship between educator and student. Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

A school employee commits an offense when he "engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school *at which the employee works*[.]" Tex. Penal Code Ann. § 21.12(a)(1) (West Supp. 2014) (emphasis added). "The prohibitions of section 21.12 are clear and unequivocal:  if you are an employee of a Texas public or private primary or secondary school, you must not engage in sexual conduct with students who are enrolled at a school where you work[.]" *Ex parte Morales*, 212 S.W.3d 483, 499 (Tex. App.—Austin 2006, pet. ref'd). Teachers and other school employees "occupy positions of public trust with respect

2

to the students enrolled at their school." *Id*. at 497. Section 21.12 is "limited specifically to employee sexual conduct with students enrolled at the same school where the employee works, a class of persons uniquely within the proximity and influence of the employee." *Id*. at 496. The indictment in this case alleged that Sutton was an employee of Caney Creek High School when he engaged in sexual contact or deviant sexual intercourse with G.T., a person enrolled at Caney Creek. On appeal, however, Sutton, contends that he was employed by Conroe Independent School District ("C.I.S.D.") Police Department, and not Caney Creek, and that he never worked at Caney Creek.

According to the evidence presented at trial, Sutton was employed by C.I.S.D. Police Department. G.T. testified that, two weeks before his eighteenth birthday, he began having a sexual relationship with Sutton. G.T.'s mother testified that Sutton admitted to her that he had a sexual relationship with G.T. William Harness, the Chief of Police for C.I.S.D. Police Department, testified that Sutton contacted him and admitted having an inappropriate relationship with G.T. while G.T. was a student at Caney Creek.

Carrie Galatas, the custodian of records for C.I.S.D., testified that Sutton was employed by C.I.S.D., but was not an employee of Caney Creek. G.T. testified that Sutton sometimes picked him up at the high school when Sutton was off duty,

3

although Sutton may have been on call. G.T. testified that Sutton did not work for Caney Creek and he never saw Sutton working at the high school. Galatas explained that the school district is divided into five feeder systems and a sergeant is in charge of each feeder. Sutton was assigned to The Woodlands feeder system and was not assigned to either Caney Creek or to the feeder system in which Caney Creek was located. All sergeants, including Sutton, office at the C.I.S.D. Police Department command center. Harness explained that sergeants were not bound to their assigned feeder, but were expected to respond to other feeders if needed, served as after hours and weekend on-call sergeant on a rotating basis, and had "overlapping responsibilities."

Harness testified that Sutton owed a duty to all the schools within C.I.S.D. Mary Bice, an officer with the C.I.S.D. Police Department, testified that she considers herself to be an employee of C.I.S.D., but that she has a duty to all students in the district. Harness explained that the supervising sergeants, like Sutton, were responsible for assisting officers outside their assigned feeders and that there must have been a time when Sutton worked at one of the Caney Creek campuses. He testified that Sutton must have gone to Caney Creek High School because Sutton mentored Kimberly Grimes, the sergeant assigned to the Caney Creek feeder. According to Harness, Sutton sometimes had to cover for Grimes.

Harness and Bice testified that Sutton also supervised various school programs made available to students in the district, including G.T. who joined these programs. Bice testified that during a trip for one of the programs, G.T. stayed in Sutton's hotel room.

On appeal, the State contends that the evidence supports Sutton's conviction because Sutton's duties extended to Caney Creek, Sutton was involved in student programs in which G.T. participated, Sutton was present at Caney Creek to pick up G.T. and to meet with Grimes or cover for Grimes, and Harness testified that Sutton must have worked at one of the Caney Creek campuses at some point. However, based on the statute's plain language, section 21.12(a)(1) is limited to an employee's sexual conduct with a student *enrolled at the school where the employee works*. *See* Tex. Penal Code Ann. § 21.12(a)(1); *see also Morales*, 212 S.W.3d at 499. The record demonstrates that Sutton was an employee of C.I.S.D. Police Department. It is undisputed that the CISD Police Department offices are not located at Caney Creek. Although the jury may draw reasonable conclusions and inferences from the evidence, the record does not contain legally sufficient evidence to allow the jury to reasonably conclude that Sutton worked at Caney Creek High School.

Further, the Legislature added a class of school district employees who would be in violation of this statute regardless of whether or not they worked at the school where the student was enrolled. Tex. Penal Code Ann. § 21.12(a)(2). The State did not charge Sutton under this portion of the statute, because the Legislaure did not include police officers in this class. Accordingly, we conclude that the evidence is legally insufficient to support Sutton's conviction for improper relationship between educator and student. *See Jackson*, 443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13. Because no other offense was charged, we need not determine whether another offense was proved. *See Pokladnik v. State*, 876 S.W.2d 525, 527 (Tex. App.—Dallas 1994, no pet.). We sustain issue one and need not address issue two. *See* Tex. R. App. P. 47.1. We reverse the trial court's judgment and render a judgment of acquittal.

REVERSED AND RENDERED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 7, 2015
Opinion Delivered July 15, 2015
Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

6

DISSENTING OPINION

The majority opinion concludes that "the record does not contain legally sufficient evidence to allow the jury to reasonably conclude that Sutton worked at Caney Creek High School . . . ," and that the evidence is legally insufficient to support Sutton's conviction. I must respectfully disagree.

Based on the record, I conclude that the evidence is legally sufficient to support Sutton's conviction for engaging in an offense as described in section 21.12(a)(1) of the Penal Code. *See* Tex. Penal Code Ann. § 21.12(a)(1) (West Supp. 2014). The jury could have drawn reasonable conclusions and inferences from the evidence to reasonably conclude beyond a reasonable doubt that Sutton's work as a Sergeant with the Conroe Independent School District (C.I.S.D.) police department extended to Caney Creek High School, even though his physical office may have been located elsewhere in the district.

Sutton initially argues on appeal that section 21.12(a)(1) does not apply to him because he was not an "employee" of the school where the student was enrolled.[1] The majority does not specifically address this argument presumably because it concludes the evidence is legally insufficient for the jury to reasonably

---

[1]Sutton does not dispute the fact that he had a sexual relationship with G.T. while G.T. was enrolled as a student at Caney Creek High School, a school that is within the jurisdiction of the C.I.S.D.

conclude that Sutton worked at Caney Creek High School. Section 21.12(a)(1) prohibits an "employee of a public or private primary or secondary school" from engaging in sexual contact, sexual intercourse, or deviate sexual intercourse with a person enrolled in a school at which the employee works. Section 21.12(a)(1) does not define the word "employee." The legislature expressly states that the statutory provision in question applies to an "employee of a public or private" school. Sutton concedes on appeal that he "was officially employed by CISD not by any particular school," and he agrees that all other public school employees in Texas would be employed by school districts and not individual schools. Because public school employees are employees of the particular school districts where they work, in order for subpart (a)(1) of the statute to mean what it says, i.e., that it applies to an employee of a public school, the statute must also necessarily include employees of public school districts.

Undefined terms in a statute are typically given their ordinary meaning, unless a different definition is apparent from the term's use in the context of the statute. *See* Tex. Gov't Code Ann. § 311.011 (West 2013); *In re Shaw*, 204 S.W.3d 9, 16 (Tex. App.—Texarkana 2006, pet. ref'd). Jurors may "'freely read [undefined] statutory language to have any meaning which is acceptable in common parlance.'" *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012)

(alteration in original) (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). While we apply the "plain language" of a statute, we must examine the context within which the words are used. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. Tex. Gov't Code Ann. § 312.005 (West 2013). We may consider how a particular interpretation would lead to consequences that the legislature in the context in question could not possibly have intended. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

It is apparent from the term "employee" as used in the context of the statute in question, that the legislature intended section 21.12(a)(1) to govern public *school* employees. To read the word "employee" as requiring the State to prove that the "employee" was officially employed by a school, rather than the school district where the employee works, would be directly contrary to the inclusion of "public schools" within subpart (a)(1), and it would mean that subpart (a)(1) would never apply to any teachers, educators, or other employees who work in any of the hundreds of public schools and school districts across the State of Texas, because they are officially employed by the school districts rather than the schools where they work. Therefore, I conclude that section 21.12(a)(1) applies to Sutton, a public school employee who was officially employed by the school district. *See*

Tex. Penal Code Ann. § 21.12(a)(1); *see generally Ex parte Guerrero*, No. 05-06-01316-CR, 2006 Tex. App. LEXIS10780, at \*8 (Tex. App.—Dallas Dec. 19, 2006, pet. ref'd) (not designated for publication) (Section 21.12 is not impermissibly vague for failing to define "employee" or "student" and the words are given their plain, ordinary meaning).

Sutton also argues that the evidence is legally insufficient for the jury to reasonably conclude that he worked at Caney Creek High School. When assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine based on that evidence and reasonable inferences therefrom, whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

It is undisputed on appeal that at the time of the offenses in question that Sutton was a Sergeant with the C.I.S.D. police department. According to the Chief of the C.I.S.D. police department, Sergeants in the C.I.S.D.'s police department work on a district-wide basis at the schools within the district. Sutton worked with

G.T.'s mother at the C.I.S.D. police department, and Sutton was a like a "mentor" to G.T. In August of 2012, when G.T. was seventeen and enrolled as a student at Caney Creek High School, Sutton contacted G.T. on a mobile phone messaging service.[2] At first, G.T. did not know the person that had initiated the contact was Sutton, but Sutton could see a picture of G.T. that G.T. had posted on the mobile messaging site. Through the use of "the guessing game," G.T. confirmed that the person who contacted G.T. was Sutton, and later that same month Sutton and G.T. began to meet for sexual encounters.

> Q. [State's Counsel]: Okay. And how would this work? I mean, what would he -- how would you get together?
> A. [G.T.]: I would ask my mom if Chris could take me home because -- I mean, he just happened to be around the area and she would just say, yeah. You know . . .
> Q. Okay.
> A. He could take me home.
> Q. Take you home from school?
> A. From school.

G.T. testified that Sutton picked G.T. up from school while Sutton was using a C.I.S.D. vehicle and while Sutton was in uniform, that Sutton drove G.T. home, and that Sutton had sexual contact with G.T.[3]

---

[2]G.T. described the mobile phone messaging service as an application for cell phones for people "who are looking either to date someone, hook up with someone or you know be friends."

[3]G.T. testified about the sexual encounters with Sutton. G.T. also recalled an occasion when G.T. and Sutton went on a "school trip" to San Antonio for Kid

The jury could have reasonably concluded from the evidence that Sutton, as a Sergeant with the C.I.S.D. police department, held a position of authority over students in the School District, including students at Caney Creek High School. Sutton was personally involved with two district-wide C.I.S.D. extracurricular programs and he worked with G.T. and other students in those programs. Sutton was the coordinator-in-charge of Kid Chat, a crime stoppers program in which Sutton worked with G.T. and other students from across the district to provide rewards for tips provided by students regarding criminal activity on school campuses:

> Q. [State's Counsel]: . . . Can you tell us a little bit about what Kid Chat is?
> A. [G.T.]: Yes. It is an organization where kids in the school district meet and we get these -- I guess, what they're called is bids. And where -- I guess, Chris [Sutton] came to us with these bids. And it's usually kids -- anonymous kids calling in about, you know, either drugs they've seen in school and drugs being sold in school or other things that are happening in school that can be, I guess, rewarded with money because it will help the police department find these people and stop whatever is happening. I guess, the drugs or you know whatever -- whatever other illegal acts are happening.
> Q. So, it's kind of a tip line?
> A. Yes.
> Q. Student [sic] would come with information?
> A. Yes.
> Q. And who was in charge of Kid Chat? Who ran it?

Chat, and G.T. stayed in a hotel room with Sutton. G.T. denied that any sexual activity occurred during that trip.

A. Chris [Sutton].
Q. All right. So, would students from Caney Creek be involved with that?
A. Yes. Students from all around the school district.

Sutton was also involved with the Junior Leadership Program comprised of high school students identified as "Junior Leaders." While G.T. was enrolled at Caney Creek High School, G.T. was a participant in both programs.

G.T.'s mother learned about Sutton's relationship with G.T. from G.T.'s boyfriend, who had discovered old messages from Sutton on G.T.'s cell phone. Exhibits depicting certain cell phone records and several text messages were introduced into evidence without any objection from Sutton. According to a text message dated February 14, 2013, G.T.'s boyfriend sent G.T.'s mother a text stating that G.T. "had an affair with Chris Sutton during [G.T.'s] High[]School years. And again on February 8th. Check [G.T.'s] IPod when [G.T.] gets home. I'm done with [G.T.]." A series of text messages followed, and on February 15, 2013, G.T.'s boyfriend sent another message to G.T's mother stating that Sutton was "at Caney Creek" when the boyfriend dropped G.T. off at school.

G.T.'s mother confronted Sutton about the allegations. Sutton admitted to G.T.'s mother that Sutton had an "inappropriate relationship" and that he was "sexually active" with G.T. G.T.'s mother met with Sutton and with Sutton's wife to discuss the matter further. G.T.'s mother testified that she believed the

relationship between Sutton and G.T. was against the law because at the time G.T. was still a student and Sutton was an employee of C.I.S.D. Sutton resigned from the C.I.S.D. police department. Chief Harness, the Chief over the C.I.S.D. police department, testified that when Sutton resigned from the police department, Sutton expressed that his primary concerns were for his family and "staying out of prison."

Harness further explained to the jury that the C.I.S.D. police patrolled and responded to calls across the entire school district. Harness testified that Sergeants had "overlapping responsibilities," and the Sergeants were always "on-call." Harness described the C.I.S.D. police department as a "24/7" operation; the officers work during school hours, as well as during nights and weekends, across the entire district.

> Q. [State's counsel]: And they would be expected to respond to the entire district?
> A. [Harness]: Yes, ma'am.
> Q. So, do your sergeants have the duty only to their feeder zone?
> A. No, ma'am.
> Q. Okay. Do your sergeants have a duty to all of the schools in the Conroe Independent School District?
> A. Yes, ma'am.

Although on paper Sutton was assigned to the Woodlands Feeder Zone and he was not assigned directly to Caney Creek High School, the Chief stated specifically that he knew Sutton's work included coverage at Caney Creek High School.

8

Q. [State's Attorney]: Did the defendant ever go to Caney Creek High School?
A. [Chief Harness]: Yes, I know he did.
Q. Okay. And how do you know that?
A. There's assignments to Caney Creek High School. The sergeant that was assigned there, he mentored --
Q. And who was the --
A. It was Sergeant Grimes.
Q. Okay. And can you say her full name?
A. Kimberly Grimes.
Q. And the defendant mentored Kimberly Grimes?
A. Yes.
Q. And --
A. All the sergeants would be expected to go assist another sergeant.
Q. Okay. Now, I want to back up. Sergeant Kimberly Grimes[,] she was the sergeant that was in charge of what feeder?
A. At that particular time, Caney Creek.
Q. Okay. And the Caney Creek feeder would include Caney Creek High School?
A. Yes, ma'am.
Q. Now, to your knowledge, did the defendant and Sergeant Grimes have a personal relationship?
A. Yes.
Q. Okay. And did the defendant have to cover for Sergeant Kim Grimes on more than one occasion?
A. Yes.

In a jury trial, the jury is the exclusive authority on the credibility of the witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give deference to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. A rational trier of fact could have drawn reasonable inferences from

9

the evidence that Sutton worked on a district-wide basis, and that from time to time, he also worked at Caney Creek High School. Considering all of the evidence in a light most favorable to the jury verdict, a rational jury applying the common, ordinary meaning of the undefined terms in section 21.12(a)(1) could conclude, beyond a reasonable doubt, that Sutton was guilty of engaging in an improper relationship as charged in the indictment. Accordingly, I would conclude that the evidence is legally sufficient to support Sutton's conviction.

In Sutton's appellate brief, Sutton also challenges the constitutionality of section 21.12(a)(1), arguing that the statute is unconstitutionally vague as applied to him because he "was not put on notice that his actions were proscribed by this section of the penal code." Because I conclude the evidence is legally sufficient to support the jury's verdict of guilt, I also briefly address Sutton's constitutional challenge.

As a general rule, constitutional challenges to a statute are forfeited by the failure to object at trial. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995). Issues of procedural default, such as preservation of error, are systemic and must be reviewed by the courts of appeals, even when the issue is not raised by the parties. *Bekendam v. State,* 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). To preserve

error for review, Sutton had to challenge the constitutionality of section 21.12(a)(1) as applied to him in the trial court. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (facial challenge); *Curry*, 910 S.W.2d at 496 (as-applied challenge); *cf.*, *Smith v. State*, Nos. PD-1790-13, PD-1791-13, PD-1792-13, & PD-1793-13, 2015 Tex. Crim. App. LEXIS 707 (Tex. Crim. App. June 24, 2015) (wherein the plurality allowed the appellant to challenge for the first time on appeal in a petition for discretionary review the facial constitutionality of his conviction under Section 33.021(b) because that section of the statute has been declared facially unconstitutional.). No court has declared section 21.12(a)(1) facially unconstitutional, and the record shows that Sutton did not make an "as applied" constitutional challenge to the statute in the trial court. Accordingly, Sutton did not preserve his constitutional challenge for our review, and therefore I would also overrule his second issue.[4]

---

[4]With respect to Sutton's statement that he "could not be put on notice that his conduct was unlawful," it is not a defense to prosecution that the actor was ignorant of the provisions of any law after it has taken effect. Tex. Pen. Code § 8.03(a) (West 2011). Notably, uncontested evidence presented at trial established that Sutton received a copy of the C.I.S.D. employee handbook. The custodian for the school district testified that the handbook contained a written rule that prohibited all school district employees from having any kind of dating or sexual relationship with any students. Therefore, presumably Sutton knew his relationship was expressly prohibited by his employer. Moreover, when Sutton was first confronted about the affair, Sutton admitted to G.T.'s mother that he had an "inappropriate relationship" with G.T., and he then stated to Chief Harness that his primary

Accordingly, I would affirm.

_____
LEANNE JOHNSON
Justice

Dissent Delivered
Date July 15, 2015

---

concerns were for his family and "staying out of prison." Such statements could by implication indicate that Sutton knew his relationship was also in violation of the criminal law. Finally, simply because section 21.12(a)(1) fails to define the word "employee" does not render section 21.12(a)(1) unconstitutionally vague or otherwise fail to put Sutton on notice that his conduct was unlawful. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989); *Guerrero*, 2006 Tex. App. LEXIS 3718339, at *8.